## Baltimore & Ohio Southwestern Railroad Company v. William Arnold.

1. ASSUMED RISK—*when doctrine of, applies.* Where a servant abandons the usual and safe way of doing his work and experiments with a different mode and one which might at any moment become dangerous, he is held to have assumed the risk incident to the method adopted by him.

Action on the case for personal injuries. Appeal from the Circuit Court of Marion County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the February term, 1905. Reversed with finding of facts. Opinion filed September 8, 1905.

L. M. KAGY and KRAMER, KRAMER & SHAEFFER, for appellant; EDWARD BARTON, of counsel.

C. E. JENNINGS, FRANK F. NOLEMAN and W. F. BUNDY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee was injured on August 13, 1903, by having his foot caught between the bumpers of two cars of appellant, composing part of a work train, and brought this suit against appellant in the Circuit Court of Marion County, for damages.

B. & O. S. W. R. R. Co. v. Arnold.

The declaration contained four counts, the second of which was withdrawn by appellee after the evidence was all in.   The first count charged, that while appellee was attempting to get upon said work train, pursuant to the orders of the section foreman, using due care and caution for his own safety, appellant negligently and carelessly, without warning to appellee, violently moved the engine and cars of the said train and by means thereof the right foot of appellee was caught between the deadwood iron plates and bumpers of two of the cars and injured. The third count charges appellant with negligently and carelessly moving the engine and train with great violence, thereby causing the cars to bump together while appellee, in attempting to board one of the cars in accordance with the orders of his section foreman, was in a position of peril; and the fourth, that it was the duty of appellant, while appellee and the other workmen were attempting to get upon said train, to keep the same motionless and still until they should get upon the cars.

On the morning of the day above mentioned, appellant had a work train with a crew of men engaged in hauling dirt and filling in its road bed a short distance east of Salem, in Marion County, at a place where a depression in the ground was spanned by a trestle, the filling being done from both ends of the trestle.   The dirt was hauled from a point a little further east on cars, which were so arranged as to unload the dirt automatically, by means of dump boards or trap-doors, when the cars arrived at the proper place.   The train was operated by an engineer, fireman and two brakemen.   Some of the dirt in the cars would fail to go out when the dump boards or trap-doors were opened and men were required to go upon the cars and shovel the dirt out to complete the work of unloading.   This work was done by an "extra gang" of men some thirty in number, who were working under the direction of a section foreman, named Russell, who also directed the movements of the train.   Appellee who was at the time about forty-six years of age, was one of the extra men and it was his

duty to help others unload the cars and while the train was gone for another load to assist them in grading and leveling down the dirt which had already been dumped. Each car was equipped with two iron stirrups, one on each side of the car near the end at diagonal corners. Above each stirrup on the side of the car was a hand-hold consisting of an iron rod about eight inches long extending up and down the car. At each of said corners there was also another hand-hold located on the end of the car, consisting of an iron rod of the same length, placed horizontally on the car. Extending across the end of each car was what was called the end sill, which was on a level with the bottom of the bed, was outside of the end gate of the car, and was some six or eight inches in width. In mounting a car by means of these appliances, a workman would first place his foot in the stirrup, then take hold of the hand-hold at the side of the car and step up on the end of the sill at the corner of the car, and either step on the next hand-hold and then over into the car, or step over into the car directly from the end sill. From the center of the end sill, extended two blocks of wood about twelve inches in length, six inches wide and four inches apart, called deadwoods. On the end of the deadwoods were iron plates and underneath them were the drawheads and couplers of the cars. Appellee had been engaged in this work some two days before he was injured and had worked as a member of an extra gang on the same road, engaged in shoveling cinders out of cars for eighteen days, about two months previous. On the morning in question the engine came from the east, pushing eleven cars of dirt and stopped with the west portion of the train extending over the unfilled part of the trestle and the engine with the east three cars over the fill where the men were. The men were about equally divided in number on the two sides of the train, appellee being on the north side. The foreman ordered them on the cars, telling them to hurry up and get out of the way of the local, which was another train then nearly due. Appellee went in between the third and fourth cars to get onto the third car. He laid

his shovel on the end sill on the right hand side, placed one hand on the sill of each car and swung himself up on to the deadwood, picked up his shovel and was straightening himself up with one foot resting on the bumper of each car some twelve or fourteen inches apart, when the train moved, he lost his balance and his right foot slipped down between the deadwoods and as the cars came together, it was caught and severely injured.

A number of reasons were assigned by appellant for the reversal of the judgment in this case, but we consider it unnecessary to discuss any of them, except that which refers to the question whether appellee was guilty of contributory negligence in bringing about the injury of which he complains. Admitting that the foreman ordered the train to be started at the time in question, and that the engineer and fireman failed to ring the bell or blow the whistle as a warning prior to starting the train, questions which are in dispute and about which there is a conflict of evidence, yet those facts would not relieve appellee from the use of ordinary care and caution for his own safety in getting upon the cars.

It is undisputed that the cars were equipped with stirrups and handholds for the purpose of affording a safe means of mounting for those whose duty made it necessary for them to board the cars. Appellee did not avail himself of the ordinary and safe means provided for him of getting upon the car but chose another and obviously dangerous way of mounting. The evidence fails to disclose any good reason why appellee should have exposed himself to the unnecessary hazard of swinging himself up between the cars and raising himself to an erect position with one foot on the deadwood of each car, instead of mounting the car in the ordinary way, by means of the appliances furnished for that purpose, and, under such circumstances, appellant could not be held liable in damages for the injuries sustained by him.

The above doctrine is in accord with that laid down by this court under a similar state of facts in the case of

Southern Railway Company v. William Lambert, 116 Ill. App. 52, where it is said: "Appellee having abandoned the usual and safe way of getting on the car and experimented with a different mode and one which might at any moment become dangerous, must be held to have assumed the risk incident to the method employed by him. Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Homersky v. Winkle Terra Cotta Co., 178 Ill. 562; Wabash R. R. Co. v. Propst, 92 Ill. App. 485. ' A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution.' Lovenguth v. City of Bloomington, 71 Ill. 238; North Chicago St. R. R. Co. v. Cossar, 203 Ill. 609."

The judgment of the Circuit Court will be reversed.

*Reversed, with finding of facts.*

Finding of ultimate facts, to be incorporated in the judgment of the court:

We find that appellee was not, at the time he received the injuries complained of in this case, in the exercise of ordinary care for his own safety, and that his negligence contributed to bring about his injuries.