# THE CITY OF CHICAGO

*v.*

# MARY E. BIXBY.

1. CITY—*duty in respect to sidewalk and step to lower grade.* A city is bound only to the exercise of reasonable prudence and diligence in the construction of a step from a higher to a lower sidewalk, and is not required to foresee and provide against every possible danger or accident that

may occur. It is only required to keep its streets and sidewalks in a reasonably safe condition, and is not an insurer against accidents.

2. NEGLIGENCE—*injury from defects in sidewalk.* In an action against a city, to recover for a personal injury resulting from negligence in the construction of steps from a higher to a lower part of a sidewalk, it is error to instruct the jury that if the steps were improperly constructed the city is liable, as ignoring the question of their safety by the use of reasonable care.

3. INSTRUCTION—*must not assume a fact in issue.* An instruction should not assume a fact which is for the jury to find from the evidence, as, that a certain condition of a step or steps communicating from one portion of a sidewalk to another caused a party to fall.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

This was an action on the case, by the appellee against the appellant, to recover damages for personal injuries resulting from an alleged defective sidewalk.

A trial was had, resulting in a verdict and judgment in favor of the plaintiff for $2000, to reverse which this appeal was taken.

Mr. EGBERT JAMIESON, for the appellant.

Messrs. E. & A. VAN BUREN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee, in passing along Green street, in the city of Chicago, slipped and fell, and broke her leg. She thereupon sued the city to recover damages for the injury, charging negligence on the part of the city in constructing the walk at the place of the accident. At the place where appellee fell, a portion of the walk was up to grade, and a portion ten or twelve inches below grade, and to enable persons to pass conveniently, a step had been placed at the intersection of the two walks, about six or seven inches wide and two inches thick, extending the entire width of the sidewalk, and it was sound and firmly fastened. It seems there was ice on the walk, and it was very slippery at the time. Appellee was descending from the upper

to the lower walk, and was on the step when she fell and sustained the injury.

It is first claimed that the back part of the step was in front of a perpendicular line from the front edge of the upper sidewalk, and appellee's heel caught back of the step and caused her fall. We think the evidence fails to establish the fact. Appellee says it was very near on a perpendicular line, and Smith, a sidewalk inspector, who examined it at the request of appellee's husband, says it was on a line. Other witnesses, however, think it was forward of such a line about one inch. But even concede that it was an inch forward of a perpendicular line, we fail to see how the heel could be caught behind the step, in descending from the upper to the lower walk. To do so, the the foot would have to descend perpendicularly from the upper walk to the step. All must know that persons do not descend stairs or steps in that manner. In doing so, they naturally step forward and downward. To step down perpendicularly, it would require a fixed purpose to do so, and would be a departure from what would be the natural course of stepping down and forward. We fail to see that there was any negligence in this part of the structure.

It is also urged that there should have been a board back of the step, so as to have closed up the space, so that appellee's foot could not have slipped back as she says it did, and that it was negligence in failing to so construct the step. We do not see, nor has it been shown, that this was essential to safety, or that it was negligence to so construct the step. It certainly could not have been very dangerous, as it had been used for about three years before the accident, and there is evidence of but one other person ever having fallen at that place, and he says he had at the time forgotten that the step was there. So that proves nothing as to the safety or danger of the place, as the fall was occasioned by the negligence or inattention of this witness. Had it been improperly or dangerously constructed, we would have expected that some one, in this long period, would have been injured or, at least, endangered by the defect. It was on a public street in Chicago,

where there was, no doubt, much travel, and, if so, it tends strongly to prove its proper construction and safety.

After such an accident, it is natural for persons then to conclude it was not safe. But it is the fact of the injury having occurred, that suggests the idea of want of proper construction. It is more than probable, that immediately before this occurrence the same witnesses would have said this step was safe, and would have referred to the great length of time it had been used, and the large number of persons who had passed over it without accident, as strong evidence of the fact. It then follows, that the opinions of these unskilled witnesses are not of any great weight, especially as they do not describe a structure that strikes our minds as being dangerous.

It is claimed that the descent should have been by an inclined plane, and, we suppose, with cleats or cross strips to prevent slipping. It seems to us that such a structure would not be as safe as the step. The space above the cleats or strips would be liable to fill up with dust and with ice, so as to afford no obstruction against slipping in descending. When so filled, there would be nothing to prevent the foot from sliding on the inclined plane, and would, therefore, be less secure than a step constructed as this was.

The city was bound only to the exercise of reasonable prudence and diligence in making this step. It is not required to foresee and provide against every possible danger or accident that may occur. It is not an insurer against accidents, but is only required to keep its streets and sidewalks in a reasonably safe condition for the accommodation of travelers and pedestrians, and we are of opinion that the city has not failed in its duty in this instance. We think the evidence shows that the sidewalk was reasonably safe, and, if so, the city should not be held liable.

Appellee testified that she had passed over the place a thousand times or more. She was, therefore, well acquainted with the locality and the structure and situation of the step, and if she had supposed there was any danger, she would, probably, have exercised such precaution as would have prevented her

fall. There was ice on the walk, as appellee swears, and if so, all parts of a sidewalk are dangerous, unless extraordinary care is taken by persons passing over it. We think the evidence shows that the fall was the result of an accident occasioned by the ice, and not from a defective construction of the walk. We are clearly of opinion that the evidence establishes no negligence on the part of the city, and that the evidence fails to sustain the verdict.

Complaint is also made of appellee's second instruction. It is this:

" The court instructs the jury, that if they believe, from the evidence in this case, the injury in this case resulted from an imperfect or improper step or steps, communicating from one portion of the sidewalk to another, which occasioned the plaintiff to fall and break her leg, while using ordinary care, and the city knew, or ought to have known, of its existence, from the length of time it had existed, then the defendant is liable.

" It is the duty of the city to keep the sidewalks in such condition as will secure the safety of passengers traveling over them, when using ordinary care, as well when covered with snow and ice as any other time, if the city has had notice of such condition, or it has been so long in that condition that the city, if exercising ordinary diligence, would or should have known of it."

This instruction is inaccurate. It seems to inform the jury that this step, as constructed, caused appellee to fall. That was a part of the issue being tried, and it should have been left to the jury. If the step occasioned the fall, it was but a short stride to the conclusion that it must have been defectively and improperly constructed. And, for aught we can know, the jury may have been misled by this assumption. Again, they are told by the instruction, that if the injury resulted from an imperfect or improper step or steps, etc., the city was liable. The law does not require the city to make such works perfect. It only requires it to render them reasonably safe, without reference to their perfection. We appre-

hend that there are few, if any, sidewalks in that or any other city that could not be improved and made better, and, if so, they are imperfect, and no court, we apprehend, has ever intentionally announced that such is the duty of a city.

Nor was it correct to instruct the jury, if the step was improperly constructed, the city would be liable. It might be improperly constructed, and yet be entirely safe for persons passing over it, using reasonable care. The instruction was too broad. It should have required of the city only reasonable care and skill in constructing the step. As given, it may, and probably did, mislead the jury in their finding.

From what has been said, it is unnecessary to discuss the question of damages.

For the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*