## Nora Powers, Appellee, v. City of East St. Louis, Appellant.

1. NEGLIGENCE—*when question of construction of sidewalk not one of law.* It is not the law of this state that the jury is entitled to pass on the case only where the court can say as a matter of law that the plan of construction with respect to a sidewalk was negligent; such question in this state is one of fact for the jury unless the evidence shows as a matter of law that there was no negligence in the plan of construction employed.

2. CONTRIBUTORY NEGLIGENCE—*when pedestrian injured upon sidewalk guilty of.* It appearing that the sidewalk in question was not inherently dangerous, that it had no concealed defect or imperfection in its construction or make-up, that the condition complained of was the existence of an incline and a difference in levels, *held*, that the plaintiff was guilty of contributory negligence, she having testified that though her eyesight was not so good as when younger yet that she could see all right, that it was a fine sun-shiny day when she was injured, that if she had looked down at the rise in the sidewalk she would have seen it, that she was looking ahead, that she didn't look only when she fell, that there was nothing to prevent her from seeing if she had looked, and that if she had looked and known it was there she would not have fallen.

3. SIDEWALKS—*care required of municipalities.* When a city or village has exercised reasonable care and prudence to construct its sidewalks in a reasonably safe condition for travelers using reasonable care for their safety, it has done all the law required of it in that regard. It is not required to foresee and provide against every possible danger or accident that may occur.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed April 15, 1911.

**Statement by the Court.** The City of East St. Louis, appellant, caused the owners of the abutting property on North Fifth street between St. Louis and Illinois avenues to remove an old board walk and replace it with a granitoid sidewalk of the width of six feet. The walk was built on the west side of said street and extended north and south. Near the middle

of this block a colored man by the name of Peacock was the first to build the walk abutting his property of the width of twenty-five feet. He built his walk practically level; but when the adjoining owners built their walks there and adjoining his walk, they constructed them three inches higher at the inside and an inch or two inches higher at the curb or outside, of the walk. At the junction of the lower walk with the higher walks there were bevels, the inclines from the lower to the higher walks being at an angle of forty-five degrees or more. At the center of the walk at the north bevel, where plaintiff received her fall, the difference in level was about two or two-and one-half inches. The walks, including the bevels, were otherwise perfectly smooth and even and very substantially constructed. This street was one of the public streets of said city, of which it had charge and control. Upon the afternoon of a clear, bright day, about 2 o'clock of February 19, 1909, appellee, while walking north on this walk, fell and broke her arm. She sued the city to recover for her injuries and charged in her declaration that the appellant had constructed and maintained said walk as aforesaid in a dangerous and unsafe condition. The trial resulted in a verdict and judgment in her favor and against appellant for $600.

W. P. LAUNTZ and C. E. POPE, for appellant.

D. J. SULLIVAN, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Appellant insists on this appeal as its principal ground for a reversal of the judgment that the plaintiff failed to prove a cause of recovery against the city, and that therefore the court erred in refusing, at the close of all the evidence, to direct a verdict in its favor. The only substantial difference in the evidence

for the plaintiff and the defendant on the trial is that one witness for the plaintiff testified that the inner side of the upper walk where plaintiff fell was about three inches higher than the lower walk, and that the curb side was about two inches higher, while one witness for appellant states that he made actual measurements and that these different heights were respectively three inches and one inch and that the bevel was a forty-five degree incline. Counsel differ in their contentions as to what the angle of the incline really is, but so far as we are able to see these contentions are not material in the settling of this case. It is contended by the appellant that when the declaration alleges that the injury resulted from the negligent plan of construction adopted with respect to a sidewalk, the jury is entitled to pass on the case only where the court can say as a matter of law that such plan of construction was negligent, citing City of Chicago v. Langlass, 66 Ill. 361; Same v. Bixby, 84 Ill. 82; and Same ads. Healy, 131 Ill. App. 183. While the last case above cited seems to hold the law to be as stated, yet, in view of what the Supreme Court has said in City of Chicago v. Seben, 165 Ill. 371, we do not think that the Michigan doctrine is applicable in this state, and we are unaware of any decision of the Supreme Court that upholds the doctrine as laid down in the Healy case. At any rate, such doctrine cannot be applicable to the facts in this case. The evidence rather tends to show that the difference in levels in this walk was occasioned by the failure to follow a plan or grade for its walk that the city may have established, when the lower walk in question was built. There was no evidence of any plan established by the city to have its walk in this block built on different levels. The real questions in this case are, was the walk as it was built and maintained unsafe and dangerous for pedestrains using reasonable care for their own safety, and was the plaintiff in the exercise of reasonable care for her own safety at and just before

the time she was injured? There is no evidence to support the proposition that the walk was thus dangerous and unsafe except the bare fact of the difference in the height of the two portions of this walk and the incline spoken of, and the further fact that the plaintiff and one other person had been injured there. All the surfaces were smooth and the difference in the heights could have been easily seen for fifty feet or more by any person with fairly good eyes who should be walking toward the same on a clear, bright day if he had but looked once at the walk ahead of him. There was nothing inherently dangerous to a traveler in this walk. There was no concealed defect or imperfection in its construction or make-up. For one to pass over it and say that they did not see the incline and difference in levels, is to admit that they did not look at the walk at all, unless their sight be very, very poor. The plaintiff testifies that her sight is not so good as when younger, but that she can see all right; that it was a fine, sunshiny day when she was injured; that if she had looked down at this rise in the walk that she would have seen it; that she was looking ahead; that she didn't look only when she fell; that there was nothing to prevent her from seeing if she had looked, and that if she had looked and known it was there she would not have fallen. How then can it be said that she was in the exercise of ordinary care for her own safety, when added to this evidence is the further fact that she had already just a moment before her injury stepped down from the same higher level to the lower level of the walk twenty-five feet south from the place of her injury? We cannot hold that a walk of two smooth granitoid surfaces built upon two different levels, varying in height of from two to three inches and connected with smooth bevel surfaces, is proven to be unsafe and dangerous to travelers thereon using reasonable care for their own safety simply because some one has been injured by falling on it. After such an accident, as said in

the Bixby case cited below, it may be natural for persons then to conclude it was not safe. But it is the mere fact of the injury that suggests the idea of want of proper construction, and the disinclination of the human mind to attribute the fall to the negligence of the traveler. No reasonable mind, it seems to us, could foresee that an injury would happen to a traveler thereon while exercising reasonable care. To hold that this sidewalk as constructed was not reasonably safe within the meaning of the law would be virtually to hold that all walks should be smooth and level. This would require of cities perfection in the construction of their walks and would make them virtually insurers against all damages; but the law of this state does not require such exactions, and our courts have repeatedly refused to hold cities and villages liable in such cases as this one.

When a city or village has exercised reasonable care and prudence to construct its sidewalks in a reasonably safe condition for travelers using reasonable care for their safety, it has done all the law required of it in that regard. It is not required to foresee and provide against every possible danger or accident that may occur. City of Chicago v. Bixby, 84 Ill. 82; City of Chicago v. Norton, 116 Ill. App. 570; Beltz v. City of Yonkers, 42 N. E. Rep. 401.

The court erred in refusing to direct a verdict of not guilty in this case for the reasons above given, and the judgment of the lower court is therefore reversed without remanding.

*Reversed.*

Finding of facts to be incorporated in the judgment:

We find as ultimate facts that the defendant was not guilty of the negligence charged in the declaration and that the plaintiff was not in the exercise of reasonable care for her safety at and just prior to her injury.